IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHRIS MARCHLEWICZ, | § | |
| | § | |
| *Plaintiff,* | § | SA-19-CV-00996-DAE |
| | § | |
| vs. | § | |
| | § | |
| BROTHERS XPRESS, INC., | § | |
| CHARANJIT SINGH, HARPREET | § | |
| SINGH, DHALIWAL BROTHERS | § | |
| CARRIER, INC., AND DHALIWAL | § | |
| BROS CARRIER, INC., | § | |
| | § | |
| *Defendants.* | § | |

**ORDER**

Before the Court in the above-styled cause of action are the following motions, which were referred to the undersigned for disposition: Deponent, Stephen E. Earle, M.D.'s Second Amended Objections to and Motion to Modify the Subpoena Duces Tecum attached to Defendant Dhaliwal Bros Carrier, Inc.'s Cross Notice of Deposition [#134]; Defendants' Opposed Motion to Strike Trooper Caleb Steel as a Testifying Expert Witness [#136]; Defendants' Opposed Motion to Limit the Testimony of Plaintiff's Testifying Expert Witness, Jon Paul Dillard [#142]; Defendant's Opposed Motion to Limit the Testimony of Plaintiff's Testifying Expert Witness, Jon Paul Dillard [#143]; Defendants' Opposed Motion to Exclude the Testimony of Plaintiff's Expert Witness Stephen Earle, M.D. [#152]; and Defendants Brothers Xpress, Inc., Harpreet Singh and Charanjit Singh's Motion to Strike Plaintiff's Sur-Reply to Defendants' Reply to Plaintiff's Response to Defendants' Opposed Motion to Limit the Testimony of Plaintiff's Testifying Expert Witness, Jon Paul Dillard [#173].

1

The Court held a telephonic hearing on the motions on December 9, 2020, at which all parties were present through counsel. At the close of the hearing, the Court issued certain oral rulings and took other issues under advisement. This Order memorializes the Court's oral rulings and resolves all issues left for the Court's further consideration.

## I. Background

This is a personal-injury action arising out of a motor-vehicle accident between Plaintiff Chris Marchlewicz's vehicle and an 18-wheeler driven by Defendant Charanjit Singh, who was allegedly working for Defendants Brothers Xpress, Inc. and Harpreet Singh, delivering an interstate shipment of goods, at the time of the accident. Plaintiff alleges he was also the statutory employee of Defendant Dhaliwal Bros Carrier, Inc., the interstate common carrier that had arranged for the transportation of the shipments at issue (hereinafter "Dhaliwal"). According to Plaintiff, his vehicle was struck from behind by the tractor-trailer operated by Charanjit Singh and he suffered severe injuries. This suit alleges claims of negligence and gross negligence against Singh, based on an alleged failure to keep a proper lookout and to timely apply his brakes to avoid the collision, and theories of *respondeat superior*, vicarious liability, negligent hiring, supervision, and entrustment as to Defendants Brothers Xpress, Harpreet Singh, and Dhaliwal.

Defendants have filed various motions to strike or limit the testimony of Plaintiff's non-retained experts Dr. Stephen Earle (one of Plaintiff's treating physicians) and Trooper Caleb Steel (the investigating Texas Department of Public Safety officer for the subject accident) and Plaintiff's retained expert Jon Paul Dillard (a safety consultant in the area of "motor fleet supervision"). Dr. Earle has filed a motion to modify the subpoena duces tecum served on him by Dhaliwal in conjunction with the notice of his deposition. Finally, Defendants have filed a

motion to strike Plaintiff's sur-reply filed in opposition of Defendants' motion to limit the testimony of Dillard. The Court addresses each of these motions in turn.

### I. Dr. Earle's Motion to Modify Subpoena [#134]

Dr. Earle and Dhaliwal filed a Joint Advisory concerning Dr. Earle's motion to modify the subpoena on December 8, 2020, informing the Court that they had reached an agreement on the issues giving rise to the motion [#174]. Accordingly, the Court will dismiss Dr. Earle's motion as moot.

### II. *Daubert* Motions

There are four *Daubert* motions before the Court, seeking to limit or exclude the testimony of Plaintiff's retained and non-retained experts.

**A.     Legal Standard for Admissibility of Expert Opinions**

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that trial judges must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. Subsequent to *Daubert*, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness "qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *See Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702). The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical analysis" and other "specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). The overarching focus of a *Daubert* inquiry is the "validity and thus evidentiary relevance and reliability of the principles that underlie a proposed submission." *Watkins*, 121 F.3d at 989 (quoting *Daubert*, 509 U.S. at 594–96). Because the *Daubert* test focuses on the underlying theory upon which the opinion is based, the proponent of expert testimony need not prove the expert's testimony is correct, but rather that the testimony is reliable. *Moore*, 151 F.3d at 276. This determination of reliability includes a preliminary determination of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.

*Daubert* sets forth four specific factors that the trial court should ordinarily apply when considering the reliability of scientific evidence: (1) whether the technique can or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique. *Id.* This test of reliability, however, is "flexible," and these factors "neither necessarily nor exclusively apply to all experts or in every case." *Kumho Tire Co.*, 526 U.S. at 141. "Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142. "The proponent need not prove that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore*, 151 F.3d at 276.

Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**B.      Defendants' Motion to Strike Trooper Caleb Steel [#136]**

By this motion, Defendants collectively ask the Court to exclude the testimony of Trooper Caleb Steel, one of Plaintiff's non-retained experts. Trooper Steel was the investigating Department of Safety ("DPS") officer responding to the scene of the accident and completed a Texas Peace Officer's Crash Report after his investigation of the scene, which stated that the accident occurred in a construction zone; that traffic at the location of the crash was congested due to a lane closure; and that Singh failed to control his speed, causing him to collide with Plaintiff's vehicle. (Crash Report [#136-1] at 4.) Steel will likely testify at trial as a fact witness regarding his observations about the scene of the accident and this report, but Plaintiff also designated him as a non-retained expert to testify regarding his opinions on the various factors contributing to the crash. Defendants' motion seeks to limit Steel's testimony to this fact testimony and to prevent him from testifying as to his opinion regarding the cause of the accident, arguing that Steel's deposition testimony on accident causation fails to satisfy the *Daubert* standard for reliability and improperly invades the province of the jury by rendering a legal opinion on an ultimate issue in this case. The Court will deny the motion.

5

Steel has been a state trooper in Texas for a little over five years and a peace officer for a total of eight years. (Steel Dep. [#136-2] at 6:7–12.) He has training in basic crash investigation and more advanced accident reconstruction through DPS, which he testified involved training on how to gather information from a traffic crash to determine the different factors involved in an accident, including the speeds of the vehicles involved based on such things as skid marks and other markings on the road. (*Id.* at 6:12–7:18.) He has acted as lead investigator of approximately 150 to 200 traffic crashes. (*Id.* at 11:24–12:2.) As previously noted, Steel responded to the scene of the traffic accident underlying this suit and completed a crash report. Steel testified that his investigation of the accident did not require the use of any advanced accident reconstruction techniques to determine the contributing factors of the crash because the crash was a "fairly straightforward" rear-end collision. (*Id.* at 8:19–9:2.) Steel explained that he observed that traffic was backed up at the crash scene due to construction (repaving of the interstate); that Singh's vehicle did not slow down and come to a complete stop with the traffic that was stopped or slowed ahead of him; and that his failure to do so caused the accident. (*Id.* at 9:2–8, 13:17–25, 15:3–10, 20:3–9.) In reaching this conclusion, Steel relied on the verbal statements that were given to him by the drivers involved, as well as the observed debris on the scene and damage to the vehicles. (*Id.* at 9:10–13.)

Defendants' reliability challenge is based on the alleged failure of Steel to perform any scientific analysis, to independently verify the objective factors contributing to the accident, such as vehicle speed and amount of time traveled prior to the accident, or to complete a full reconstruction of the accident. Defendants do not contest that Steel is qualified to testify in the areas of accident causation and reconstruction. The Court finds that Defendants' reliability

6

challenge and arguments regarding any alleged gaps in Steel's causation and reconstruction analysis are more appropriately handled through cross examination at trial.

Nor is the Court persuaded by Defendants' argument that Steel should not be able to render an opinion on causation because in doing so he reaches a legal conclusion reserved to the fact finder. Testimony in the form of an opinion or inference otherwise admissible "is not objectionable just because it embraces an ultimate issue" to be decided by the trier of fact. Fed. R. Evid. 704(a). Although Steel may not tell the jury which result to reach on the claims asserted by Plaintiff, he may testify as to causation, even if that is a legal issue in this case. *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239–40 (5th Cir. 1983).

In summary, Plaintiff has satisfied his burden to demonstrate the qualifications of Steel to testify as a non-retained expert in this case on the contributing factors to this accident and the reliability of his methods in determining same. The Court will therefore deny Defendants' motion. This denial will, however, be without prejudice to Defendants re-urging their arguments in a motion in limine before the District Court in advance of trial or to raising any objections to Steel's testimony at trial.

**C.     Defendants' Motion to Limit the Testimony of Jon Paul Dillard [#142, #143]**

Defendants, by two separate motions, ask the Court to limit the testimony of Jon Paul Dillard, Plaintiff's sole retained expert. Dillard is a safety consultant in the area of "motor fleet supervision" and was retained to offer an opinion on whether unsafe practices contributed to the accident at issue in this case. Dillard's expert report contains opinions as to the safety violations of Charanjit Singh, such as the failure to keep a proper lookout and failure to control vehicle speed, as well as violations by Brothers Xpress, Harpreet Singh, and Dhaliwal in their hiring, training, and supervision of Charanjit Singh. (Expert Report [#92] at 8–15.) Dillard also opines

on the contractual relationship between Charanjit Singh and Dhaliwal and opines that Dhaliwal was the statutory employer of Charanjit Singh at the time of the collision. (*Id.* at 18–19.)

By motion #142, Defendants challenge Dillard's qualifications to offer accident causation opinions based on his lack of training in accident reconstruction. Defendants also challenge the reliability of Dillard's methodology in reaching his causation opinions because he did not engage in any reconstruction or scientific analysis of the accident scene or conduct any independent investigation, only relying on produced discovery to reach his conclusions. By motion #143, Dhaliwal argues that Dillard should be prohibited from rendering an expert opinion on contract interpretation and the legal question of whether Dhaliwal was Singh's statutory employer. The Court will grant both motions.

Defendants confirmed at the Court's hearing that they are not disputing Dillard's qualifications to testify as an expert on Federal Motor Carrier Safety Regulations generally. Defendants merely object to Dillard providing testimony that that Defendants deviated from the standard of care set forth by these standards and that any safety violations were the cause of the accident at issue. The Court agrees that Plaintiff has not satisfied his burden to establish that Dillard is qualified to testify on accident causation. Although Dillard has decades of experience in commercial motor vehicle safety and compliance with safety regulations, he testified in his deposition that he is not certified as an accident reconstructionist, nor has he received any training in this area. (Dillard Dep. [#142-2] at 67:8–19.) He admitted in his deposition that he did not engage in any independent analysis or simulation of the accident site, did not visit the accident site, did not perform any calculations regarding the factors at issue in the crash, and did not interview any witnesses or parties. (*Id.* at 72:9–73:24.) Dillard is not qualified to testify on accident causation.

Accordingly, Dillard must limit his testimony at trial to general safety standards governing commercial motor vehicles, as he is clearly qualified to testify as to this topic and his testimony will assist the jury in understanding the standards at issue in this case. He may also testify on why the safety standards are what they are and how, generally, they contribute to safe driving and fewer accidents. He may not testify, however, regarding his opinions that are framed as opinions about deviations from safety standards but are actually opinions about the cause of the accident, including his opinions that: (1) Charanjit Singh failed to follow the governing safety regulations and standards or the Texas Transportation Code by failing to employ a proper lookout or failing to control the speed of his vehicle or (2) Charanjit Singh's failure to employ proper defensive driving techniques and failure to exercise ordinary care caused or contributed to the accident at issue. On the other hand, Dillard may testify that Brothers Xpress failed to provide the required safety trainings of its drivers and failed to train Charanjit Singh to be a safe and defensive commercial operator. That is within his area of expertise. But he may not testify that the failure to do proper safety training constitutes "a conscious disregard for Plaintiff and other motorists on the roadway." Dillard's expertise is about what the safety regulations require, why they are important, and what constitutes compliance. Whether Defendants' actions were conscious, unintentional, or otherwise is not within Dillard's field of expertise and is a judgment best left to the factfinder.

Finally, the Court also agrees with Dhaliwal that Dillard is not qualified to render any opinions on the contractual relationship between Charanjit Singh and Dhaliwal and the ultimate legal question of whether Dhaliwal was Singh's statutory employer. Dillard opines in his expert report that Dhaliwal failed to adhere to the governing contractual agreement between the parties; that Dhaliwal is vicariously liable for the selection and use of Brothers Xpress in selecting and

training its drivers; and that Dhaliwal was acting as Singh's statutory employer at the time of the accident. Plaintiff has filed a motion for partial summary judgment on these very legal issues, which remains pending before the District Court [#120]. Depending on the resolution of that motion by the District Court, Dhaliwal's challenge to Dillard's testimony on this issue may be mooted. But to the extent that there is something left for the jury to determine, Dillard should not be permitted to testify on this subject. It is the Court's job, not Dillard's, to interpret the relevant contracts at issue in this case. Dillard is not a lawyer or any other sort of legal expert, and his interpretations are not borne out of legal training or expertise and will not assist the factfinder but may confuse them. The jury will be instructed to follow the Court's instructions and explanations of the relevant law.

In summary, the Court will grant Defendants' motions seeking to limit the testimony of Dillard, who is not qualified to testify in the area of accident reconstruction or contract construction. The Court will also dismiss Defendants' Motion to Strike Plaintiff's Sur-Reply in support of Plaintiff's response to Motion #142 [#173] as moot, as the Court did not consider the sur-reply, which was filed without leave of Court, in reaching the conclusions stated herein.

**D.     Defendants' Motion to Exclude the Testimony of Dr. Stephen Earle [#152]**

Dr. Stephen Earle is Plaintiff's treating orthopedic surgeon and has been designated as a non-retained expert. Defendants ask the Court to limit Dr. Earle's testimony to issues related to his treatment of Plaintiff and to prohibit him from issuing any opinions regarding materials he reviewed outside of that treatment. Defendants allege that Dr. Earle's deposition testimony included testimony on medical care Plaintiff received before the accident at issue and which were not related to his treatment of Plaintiff. Defendants further allege that after Dr. Earle's deposition, Plaintiff produced additional records from Dr. Earle that were not previously

disclosed, including email correspondence between Dr. Earle and Plaintiff's counsel that suggest Dr. Earle is functioning more like a retained expert, subject to the control of Plaintiff's counsel. In other past motions before the Court, Defendants have argued that Dr. Earle should be subjected to the disclosure requirements governing retained experts because he is functioning as such. Part of Defendants' motion to exclude the testimony of Dr. Earle is based on the argument that he should have produced the report and testimony history required of retained experts under Federal Rule of Civil Procedure 26(a)(2)(B). The Court will deny Defendants' motion.

As a preliminary matter, Plaintiff confirmed at the Court's hearing that Dr. Earle is a non-retained expert and has been designated to testify only in his capacity as Plaintiff's treating orthopedist. The disclosure requirements governing non-retained experts, not retained experts, apply to Dr. Earle's designation. *See* Fed. R. Civ. P. 26(a)(2)(C). The Court will not exclude Dr. Earle from testifying in this case due to any allegation of his improper designation.

Insofar as Defendants seek to have Dr. Earle's testimony limited to his opinions only on matters strictly concerning his treatment relationship with Plaintiff, the Court finds that these issues and arguments are better addressed through a motion in limine or contemporaneous objection at trial. The only topic identified in Defendants' motion that allegedly exceeds the scope of the treatment relationship are Dr. Earle's testimony regarding a prior cervical injury of Plaintiff and treatment from other providers, based on his review of medical records of Plaintiff that he reviewed prior to his deposition but had not been aware of at the time that he treated and diagnosed Plaintiff. The Court will not preemptively exclude all testimony regarding the possible contributions of preexisting medical issues to Plaintiff's injuries treated by Dr. Earle. Dr. Earle is qualified, as Plaintiff's treating physician, to testify that in his professional opinion the injuries presented by Plaintiff are indicative of or consistent with injuries suffered by those

experiencing the impact of a rear-end collision. He is likely also qualified to testify about whether and how preexisting medical issues that were undisclosed to him at the time of his initial diagnosis of Plaintiff would affect his diagnosis or opinion on the cause of Plaintiff's symptoms. Defendants may raise their objections to such testimony at trial if the proper foundation has not been laid for the opinions.

Finally, the Court will also reject Defendants' argument that Dr. Earle should not be permitted to offer any testimony regarding the cause of Plaintiff's alleged injuries because these opinions are not reliable. Defendants argue Dr. Earle's medical causation testimony is unreliable because he was unaware of numerous pieces of relevant information prior to rendering his opinions, such as prior injuries of Plaintiff. These objections are appropriate fodder for cross examination, not exclusion. Dr. Earle, as Plaintiff's treating orthopedic surgeon, may rely on his medical training and treatment of Plaintiff to opine on the causation of his injuries.

In accordance with the foregoing,

**IT IS HEREBY ORDERED** that Deponent, Stephen E. Earle, M.D.'s Second Amended Objections to and Motion to Modify the Subpoena Duces Tecum attached to Defendant Dhaliwal Bros Carrier, Inc.'s Cross Notice of Deposition [#134] is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants Brothers Xpress, Inc., Harpreet Singh and Charanjit Singh's Motion to Strike Plaintiff's Sur-Reply to Defendants' Reply to Plaintiff's Response to Defendants' Opposed Motion to Limit the Testimony of Plaintiff's Testifying Expert Witness, Jon Paul Dillard [#173] is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' Opposed Motion to Strike Trooper Caleb Steel as a Testifying Expert Witness [#136] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Opposed Motion to Limit the Testimony of Plaintiff's Testifying Expert Witness, Jon Paul Dillard [#142] is **GRANTED** as set forth in this opinion.

**IT IS FURTHER ORDERED** that Defendant's Opposed Motion to Limit the Testimony of Plaintiff's Testifying Expert Witness, Jon Paul Dillard [#143] is **GRANTED** as set forth in this opinion.

**IT IS FINALLY ORDERED** that Defendants' Opposed Motion to Exclude the Testimony of Plaintiff's Expert Witness Stephen Earle, M.D. [#152] is **DENIED**.

SIGNED this 10th day of December, 2020.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE